BROUGHT, et al, vs CHEROKEE NATION.

Opinion delivered September 25, 1902.

1. *Appeal—Motion for New Trial—Record of—Bill of Exceptions.*

> A motion for new trial can only be brought before this court by incorporation in bill of exceptions. *Hence,* where there is no bill of exceptions, it must be taken that no motion for new trial was filed.

2. *Appeal—Motion for New Trial—When Necessary—Rulings on Pleadings Reviewable Without.*

> In any case where the proceedings excepted to as erroneous appear in the records proper, such case may be brought to this court for review by writ of error or appeal, without motion for new trial. *Hence,* errors in rulings on demurrers may be reviewed on exceptions, without motion for new trial where judgment was rendered following the overruling of this demurrer.

3. *Ejectment—Parties Plaintiff—Defect of—Attacked by Demurrer—Amendment.*

> Sec. 5028 Mansf. Dig. (3233 Ind. T. Stat.) provides that defendant may demur when there is a defect of parties plaintiff. And where an action of ejectment is brought by an improper party he can not substitute for himself, by amendment another in whom title and right of possession rested.

4. *Indian Lands—Cherokee Intruder—Ejectment of—Who may Maintain Action.*

> Under Act of Cong. June 28, 1898, Secs. 3, 4, and 6 providing that intruders may be removed from Indian lands by ejectment suit brought by the Nation or, in case of refusal or failure by the chief or governor to bring such suit, then by any member of the tribe, a complaint by a member alleging merely the failure of the chief to sue, is good as against demurrer, though a demand or request of the chief is necessary, not merely a failure.

5. *Parties—Amendment—Harmless Error.*

> Where an action is instituted by a member of an Indian tribe under

Secs. 3, 4 and 6 Act of Cong. June 28, 1898, it is proper for the court, on motion of such party, to make the Indian nation in which legal title to the lands is vested, a party to the suit, but the original party should not be stricken out.   As the defendants were not harmed, by such action,  however, and the party stricken out has not appealed, the case will not, on that account, be reversed.

6.   *Indian Lands—Intruders—Ejectment—Tender of Value of Improvements.*

In an action of ejectment against an intruder under Secs.  3, 4,  and 6 Act of Cong. June 28, 1898, it is not necessary that the complaint allege the payment of the value of the intruder's improvements, nor that a tender be kept good; it is sufficient to allege the appraisal of the improvements and tender of the appraised value.

7.   *Ejectment—Recovery of Rents and Profits.*

In an action of ejectment, brought under Secs. 3, 4 and 6 Act. of Cong. June 28, 1898, the successful plaintiff may recover, in addition to possession of the land, damages for its detention covering the rents and profits from the institution of the suit, under authority of Sec. 2637 Mansf. Dig. (1921 Ind. T. Stat.)

Appeal from the United States Court for the Northern District.

JOSEPH A. GILL, Judge.

Action by the Cherokee Nation against G. C. Brought and others.    Judgement   for   plaintiff.    Defendants   appeal. Affirmed.

This is an action of ejectment brought originally by one Andrew McAffrey against the appellants.   The complaint alleged that the plaintiff was a Cherokee citizen, and, as such, entitled to hold and own improvements upon the public domain of the Cherokee Nation, and that he claimed right and title to the farm and improvements sued for; that the defendants were citizens of the United States, known as "intruders," and had made the

improvements upon the public domain which plaintiff sought by this action to recover; that under and by virtue of the act of congress of August, 1886, a commission appointed under that act in conformity to law had reported the premises as an "intruder place," and that they had appraised the improvements theretofore placed upon it by the defendants, and the Cherokee Nation had tendered to defendants the amount of money at which they were appraised, all in conformity to said act of congress, but the defendants had refused to receive the same, and had ever since held and do now hold and occupy said premises; that the notice to quit provided by the Curtis Bill had been served upon them more than 30 days before bringing the suit, and that "the plaintiff herein desires to recover possession of the improvements and lands for the purpose of taking an allotment for himself and family; and that the Cherokee Nation has failed to institute suit to recover possession of the same." Thereafter, by order of court, leave was granted the plaintiff to amend his complaint by making the Cherokee Nation a party plaintiff. The amended complaint was filed, not differing in substance from the original one with the exception that the Cherokee Nation was made a joint party plaintiff with the original plaintiff in the suit. Afterward, upon motion, the name of McAffrey, the original plaintiff, was stricken from the complaint, leaving the suit stand with the Cherokee Nation the sole party plaintiff. The Cherokee Nation then, by leave of court, filed another amended complaint, which states the reason for filing it as follows: "Comes the above-named plaintiff, the Cherokee Nation, and, after leave of court first had and obtained, the court having sustained the motion to strike the name of Andrew McAffrey from the complaint in order to make the complaint read in conformity to the suit as it now stands, files this its amended complaint, and for cause of action against the defendant states—" With the exception that the Cherokee Nation claims title and the right of possession, and McAffrey's name is not

mentioned, it does not differ from the original complaint. It alleges that lawful notice to quit was served by the Cherokee Nation before filing the suit. To the last amended complaint a demurrer was filed by the defendants, and overruled, and, the defendants refusing to further plead judgment went against them. Exceptions were saved, and the cause appealed to this court.

M. M. Edmiston and W. S. Stanfield, for appellants.

J. S. Davenport and Will P. Thompson, for appellee.

CLAYTON, J.   There was no bill of exceptions filed in this case, and, as a motion for new trial can only be brought upon the record and before us by that means, whatever the fact may be, as far as we are concerned, it must be taken that there was no motion for a new trial filed in this case. It is contended by the appellee that in such case there is nothing before us for our determination, and that   therefore the appeal should be dismissed.   It has been many times decided by the supreme court of Arkansas, in passing on our statute in relation to this matter, that a motion for a new trial is not necessary when the error appears from the record itself, without the intervention of a bill of exceptions.   In Smith vs Hollis, 46 Ark. 21, that court say:   "A motion for a new trial is unnecessary where the errors complained of do not grow out of the evidence or instructions, but appear from the record itself without the intervention of a bill of exceptions.   In Steck vs Mahar, 26 Ark. 536, the court say:   "A motion for a new trial is essential to correct the errors growing out of the evidence or instructions, before an appeal can be entertained by this court.   Where the error complained of does not relate to errors growing out of the evidence or instructions, but is apparent from the record, without the intervention of a bill of exceptions, there is no necessity for making a motion for a new trial, and the cause in such case can

(31)

be brought to this court without making the motion; but in cases where the error complained of does not appear of record, save by the intervention of a bill of exceptions, a motion for a new trial must be made, before appeal will lie to this court." In the case of Worthington vs Welch, 27 Ark. 464, the supreme court of Arkansas say: "Was such a motion necessary in the case before us? To answer this question, it is only necessary to reiterate, in brief, the general principles so clearly enunciated in the case of Steck vs Mahar, 26 Ark. 536, and reaffirmed in the case of Merriweather vs Erwin, decided at the last term, and which seem so certainly to be contemplated by our Code of Practice, namely: 'In any case where the proceedings excepted to as erroneous appear in the records proper of the court, and the errors can be examined into and ascertained by simply reviewing such records such case may be brought to this court for review by writ of error or by appeal, without a motion for a new trial.' On the other hand in all cases where the proceedings complained of as erroneous are, in their nature, extrinsic of the records proper of the court, or when the proceedings objected to appear in the records proper, but the errors complained of cannot be ascertained without considering the proceedings in relation thereto that are extrinsic of such records, such proceedings or matters must be saved by bill of exceptions. And the only method known to the law by which they may be so saved is that they may be tendered to the judge upon his overruling a motion for a new trial, and signed and ordered filed by him." To the same effect are Ward vs Carlton, 26 Ark. 663; Merriweather vs Erwin, 27 Ark. 37; Union Co. vs Smith, 34 Ark. 684; Badgett vs Jordan, 32 Ark. 154; Douglass vs Flynn, 43 Ark. 408; Error in rulings on demurrers, relating to the pleadings, may be reviewed on exceptions without a motion for a new trial, unless waived or cured by answering over. Clark vs Hare, 39 Ark. 258. And this seems to be the rule in all of the states which have passed upon this question, except West Virginia.

See authorities cited in 14 Enc. Pl. & Prac. 829, tit. "New Trials," note 1.

Inasmuch as there was neither a bill of exceptions nor a motion for a new trial filed in this case, the only matter before us for review is the alleged error appearing upon the face of the record proper; and that is, was the defendants' demurrer to the last amended complaint of the plaintiff properly overruled? The record of the judgment, in part, sets out that: "On this 8th day of February, 1901, being one of days of the regular December 1900, term of this court, this cause came on for trial; the plaintiff Andrew McAffrey having heretofore been stricken from the complaint by order of court, and the plaintiff having amended the complaint to conform to the proceedings herein. The defendants filed their demurrer to the complaint, which demurrer was overruled by the court, and to which the defendants excepted whereupon the defendants elected to stand upon their demurrer." The fourth paragraph of the demurrer is as follows: "Defendants demur to the complaint herein because, as it now stands, the Cherokee Nation, only, is a party plaintiff, and, the original party plaintiff having no cause of action, the entire action failed when he was stricken out as party plaintiff,"—which simply means that there is a defect of the complaint as to the party plaintiff, and the fourth paragraph of section 5028, Mansf. Dig. (Ind. Ter. St. 1899, § 3233,) provides that the defendant may demur to the complaint when there is a defect of parties plaintiff. McAffreys' complaint shows no other title or right of action in him than that he is a Cherokee citizen, and is entitled to hold and own improvements on the public domain of the Cherokee Nation and that he desires to get possession of the land and improvements in suit for the purpose of allottment and that the defendants had improved such lands under the claim of citizenship; that the said claim of citizenship had been disallowed by the Dawes commission and the courts; and that

the value of their improvements had been tendered to them under the act of congress of March 3, 1893. It is clear that in an ordinary action of ejectment the claim of title and right of possession set up by McAffrey in his original and amended complaints would be wholly insufficient to sustain the action as to him; neither would he be permitted to substitute for himself as party plaintiff by amendment, as was done in this case, another, in whom title and the right of possession rested. State vs Rottaken, 34 Ark. 144. But it is contended that under the third, fourth, and sixth sections of the act of congress approved June 28, 1898 (Ind. Ter. St. 1899, §§ 57s, 57t, 57v), known as the "Curtis Bill'" under the conditions named in these sections, if the chief of the Cherokee Nation shall refuse or fail to bring an action for the possession of the lands held by such persons, then any citizen of that nation may lawfully bring the suit. The said three sections, so far as they pertain to this question, are as follows:

"That said courts are hereby given jurisdiction in their respective districts to try cases against those who may claim to hold as members of a tribe and whose membership is denied by the tribe, but who continue to hold said lands and tenements notwithstanding the objection of the tribe; and if it be found upon trial that the same are held unlawfully against the tribe by those claiming to be members thereof, and the membership and right are disallowed by the commission to the Five Tribes, or the United States court, and the judgment has become final, than said court shall cause the parties charged with unlawfully holding said possession to be removed from the same and cause the lands and tenements to be restored to the person or persons or nation or tribe of Indians entitled to the possession of the same.

"That all persons who have heretofore made improvements on lands belonging to any one of the said tribes of Indians, claiming rights of citizenship, whose claims have been decided

adversely under the act of congress approved June 10, 1896, shall have possession thereof, until and including December thirty-first, 1898; and may, prior to that time, sell or dispose of the same to any member of the tribe owning the land who desires to take the same in his allotment: provided that this section shall not apply to improvements which have been appraised and paid for, or payment tendered by the Cherokee Nation under the agreement with the United States approved by congress March 3, 1893.

"That the summons shall not issue in such action until the chief or governor of the tribe, or persons or person bringing suit in his own behalf, shall have filed a sworn complaint, on behalf of the tribe or himself, with the court, which shall as near as practicable, describe the premises so detained and shall set forth a detention without the consent of the person bringing said suit or the tribe, by one whose membership is denied by it: provided, that if the chief or governor refuse or fail to bring suit in behalf of the tribe, then any member of the tribe may make complaint and bring suit."

The complaint of McAffrey sets up just such a state of facts against the defendants as is provided for by that part of section 3 above set out; and the complaint alleges that the money provided for by act of congress of March 3, 1893, had been lawfully tendered, and that the notice as prescribed for in section 5 had been duly served, and that the chief of the Cherokee Nation had failed to bring the suit, in which event the latter clause of section 6 provides that "any member of the tribe may make complaint and bring suit."

And this, in strict compliance with the act, McAffrey did. Whether a private citizen of the Cherokee Nation, with no other right, can bring such suit because of the mere failure of the chief to do so, when there has been no demand or request made to him

to bring the action, is a question not raised in this proceeding, because the complaint alleges, in the very words of the statute, that he failed to bring the suit, and, there having been no motion filed to make it more certain, the demurrer admitted the failure, in the sense of the word used in the statute.   We are of the opinion, however, that no private citizen can bring and maintain the suit in his own behalf until the chief has first been demanded or requested to do so, and has refused or failed to comply with the demand or request.   The statute gives the chief the first right, and it uses the word "refused," clearly implying a demand, for without it there can be no refusal; and the word "failure" is introduced in the statute to cover a case where there is no refusal, but mere laches or failure to comply with the demand to bring the suit.   Inasmuch as the complaint alleges everything necessary for the foundation of a suit upon the first clause of the third section of the act, and it is alleged that the chief had failed to bring the suit, and as the statute provides that in such case any member of the tribe may make complaint and bring suit,. and McAffrey being a member of the tribe, it seems to us clear that he is a proper party to the action; and, being such, it was competent for the court, upon the motion of the plaintiff, by an amendment, to make the Cherokee Nation in which the legal title was vested, a party to the suit.   See section 5080, Mansf. Dig. (§ 3285, Ind. Ter. St. 1899)., tit. "Amendments."   We think, however, that the name of McAffrey should not have been stricken from the complaint as a party plaintiff; but as any final judgment rendered in the case for or against the Cherokee Nation would be a bar to any other proceedings, and as no one was affected by it but McAffrey himself, the defendants are not harmed, and cannot complain, and McAffrey has not appealed.

The second paragraph of the demurrer is that "the complaint does not allege that the Cherokee Nation has paid defend-

ants for their improvements, or that the Cherokee Nation has kept its tender good, or facts from which it can be inferred." The statute does not require this. The complaint alleges that a tender of the money was made to defendants and was refused by them, and the latter clause of section 4 of the Curtis Bill makes a tender alone sufficient.

The third paragraph of the demurrer is that "defendants demur to that portion of the complaint in which plaintiff seeks to recover damages for the detention of the premises sued for." The complaint only claims damages for the rental value of the lands during the pendency of the suit, and this the plaintiff is clearly entitled to recover. See section 2637, Mansf. Dig. (section 1921, Ind. Ter. St. 1899.) In an action for the recovery of real estate, the statute above cited provides that, "if the plaintiff prevail in the action, he shall recover by way of damages the rents and profits down to the time of assessing the same." And in this action there can be no doubt but that the plaintiff if he prevail, may recover rents and profits, at least from the time that the suit was instituted; and this is all that the complaint demands.

There are other specifications in the assignment of error than those above mentioned, but they all relate to matters which are not of the record proper, and, as before stated, there having been no bill of exceptions to bring these matters upon the record, they are not properly before us.

Finding no error in the proceedings and judgment below, the same is affirmed.