## WARREN *v.* MERCHANTS & PLANTERS BANK & TRUST COMPANY.

4-7277                                         178 S. W. 2d 678

Opinion delivered March 13, 1944.

*Joseph Callaway* and *D. H. Crawford,* for appellant.

*J. H. Lookadoo* and *McMillan & McMillan,* for appellee.

GRIFFIN SMITH, Chief Justice. Keener-Hall Motor Company sold a Studebaker automobile to A. L. Helms. The purchaser's note was indorsed by Rudy Hall [1] and sold to Merchants & Planters Bank & Trust Company. Helms had placed his taxicab business with O. R. Beavers, and Beavers assumed payment of the note.[2] He defaulted. Helms negotiated with W. F. Warren in an endeavor to sell the taxicab business, including the Studebaker car. A. M. Blevins operated a garage and had possession of the car for the purpose of making repairs.

[1] Hall was active executive of Keener-Hall Motor Company, a partnership.

[2] The legal effect of Helms' so-called sale to Beavers is not made clear, but this is immaterial.

Warren, against whom judgment was rendered on the Bank's complaint, contends that his arrangements were tentative, intention being to operate on a trial basis. If returns indicated a profit he expected to close the option, although the oral contract was not designated an option.

Warren talked with H. A. Daugherty, the Bank's cashier. Daugherty told him demand had been made for payment of the Helms note not later than the tenth. According to Warren, the cashier stated that none liable on the note would be released through novation. Contention is that he told Daugherty of his understanding with Helms to test the business, and Daugherty, in effect, replied that the Bank would not object to this if he (Warren) would sign the note.

Following this conversation Warren drove the Studebaker a short distance and found it needed additional repairs. He took tires from his private car and supplied spare parts, delivering them to the garage. It subsequently developed that Blevins' bill was $129.[3] Warren refused to pay Blevins and says he notified the Bank his "deal" with Helms was at an end. He admitted having paid an old telephone bill incurred by Beavers, this being necessary in order to operate the taxicab service. Warren, during this period, and later, used his individual car.

Daugherty testified that Helms discharged the first six monthly payments of $43.10 on the note.[4] Beavers indorsed the paper September 15, 1941; Warren in May, 1942. Helms was not present when Warren signed. Daugherty admitted that Warren "stated a condition." But, said the Cashier, "I told him he could sign the note if he wanted to." Daugherty emphatically denied any agreement on the Bank's part that Warren should indorse conditionally, although Warren mentioned a trade

[3] Helms and Beavers had given the Keener-Hall Company their note for $75, representing charges for tires. It, also, had been sold to the Bank. The Bank alleged Warren was to pay this item as a part of his obligation incident to the deal with Helms.

[4] "Various other parties" made payments from time to time, reducing the obligation from $1,034.40 to $624.75, inclusive of interest.

with Helms by which Warren was to test the Studebaker. If "everything worked out," and the car was in good condition, Warren would go through with the deal. Warren was told he could sign the note if he wanted to. At no time, says Daugherty, did the Bank authorize Helms to act for it in discussions with Hall and Warren.

Helms [5] testified that the transportation phase of his endeavors was known as "Helms' Taxi." In contracting with Beavers he was merely trying to salvage. Helms, in talking with Hall when Beavers took over, did not ask to be relieved of liability. He knew Beavers was not financially responsible. But Warren, he said, wanted to buy, and the object in switching from Beavers to Warren was to obtain release. In pursuance of this purpose he consulted Daugherty, who told him to see Hall. Implication is that Daugherty, without knowing just what the arrangement between Hall, Warren, and Helms would be, sanctioned substitution of parties if Hall approved. Hall did agree,[6] the understanding being that "they" should go to the Bank "and fix things up." Hall, this witness testified, "was to take care [of the transactions] and bring everything to me." This statement was followed by the assertion that he and Warren went to Blevins' Service Station the following day, where Warren took the car and assumed responsibility.

An original suit was filed by Hall. The Bank intervened. At trial its motion to be substituted for Hall as plaintiff was sustained, over objections and exceptions of Warren and Helms. Four instructions requested by the Bank, and five requested by Warren, were refused.

In an instruction given on its own motion, the Court said that as a matter of law the Bank was entitled to judgment against either Helms or Warren, "but not against both." Helms, it was said, would be liable unless he had shown another contract whereby relief had been extended. In an attempt to clarify the triangular issues

---

[5] In addition to his taxicab business, Helms operated a variety store at Arkadelphia.

[6] It should be made clear that the statement "Hall did agree" is Helms testimony as distinguished from an opinion assertion of undisputed facts.

involving Warren, Helms, and the Bank, the jury was told that Helms claimed to have talked with Daugherty concerning Warren, and ". . . [Helms] claims that Daugherty told him to confer with Hall and that whatever [Hall] agreed to would be all right as far as the Bank was concerned."

The instruction mentions Helms' contention that he and Warren, *inter se*, had an agreement by which the latter was to assume liability, an assertion contradicted by Warren who alleged negotiations with Helms were tentative—a fact brought to the Bank's attention. After stating other contentions it was said: "Under the peculiar circumstances in this case, both of these gentlemen don't owe that note—only one of them owes it. Now, since Helms was the original maker, he is liable unless he can show by a preponderance of the evidence that he made an independent contract with Warren which would relieve him of liability. . . . Now, if you find . . . that the Bank authorized Helms to negotiate with Warren and Hall and make an agreement with them which would be satisfactory to Hall, and you further find . . . that [the agreement] was satisfactory with Hall, and that Warren and Helms made a contract and [it] was completed and the provisions carried out . . . and under that contract Warren signed the note, then you will find that Helms is not liable, but that Warren is. If on the other hand you do not find [there was such a contract], then you will find that Helms is liable and Warren is not liable; or, if you find that Warren tentatively agreed to the proposition until he could investigate the business and so stated at the time, and after investigation declined the proposition, and that was the agreement and contract between Warren and Helms, and it was never . . . completed, then Helms is liable and Warren is not."

The latter part of the instruction is correct in respect of obligations or immunities arising between Helms and Warren by reason of the relationships mentioned—determination of factual issues as to such relationships having been submitted. But the Bank was entitled to

have its right to hold Helms *and* Warren submitted to the jury. Daugherty denied having agreed that any arrangements made with Hall would be acceptable. The alleged agency is expressly disclaimed. On the other hand, Warren admitted signing the note, but thinks the agreement was that his liability attached only if after testing the taxicab business he affirmed the transaction. Helms' non-liability to the Bank could come only through some act of the note-holder. At most this was a question of fact if it be conceded there was sufficient evidence of agency to require factual determination. The instruction disregarded the Bank's right to hold Helms as maker and Warren as indorser when it told the jury that one, but not both, could be liable.

Error is alleged by Warren in permitting the Bank to be substituted for Hall as plaintiff. *State* v. *Rottaken,* 34 Ark. 144, mentions applicable provision of the Civil Code, which, it is said, assumes the plaintiff has a cause of action, "and does not authorize the court in any case, where the plaintiff has failed to show a cause of action, to amend by adding the name of a party in whose favor a cause of action is shown by the complaint to exist, because such a proceeding would be practically instituting a new action, and forcing a party, at the instance of one who has no right to demand it, to commence an action when he does not wish to do so." See *Schiele* v. *Dillard,* 94 Ark. 277, 126 S. W. 835.

In *Fencing District No. 6* v. *Missouri Pacific Railroad Company,* 180 Ark. 488, 21 S. W. 2d 959, the holding was that a complaint against a designated railroad company cannot be amended by substituting another railroad company as a defendant, where the two are separate corporations. The rule stated in 31 Cyc. 475 was quoted, effect being that a statute permitting amendments as to form does not authorize an amendment making new parties plaintiff in order to sustain an action originally brought without authority. The Court added: "In the instant case there was nothing to amend. There was no proper party defendant. . . . You cannot sue one party and amend by making another party defendant—

that is, by striking out the name of the sole defendant and substituting some other defendant.''

In the case before us Hall first sued, then the Bank intervened. Defendants were the same. If it be conceded that neither was responsible to Hall, answer is that when the intervention was filed it gave information as to the true status. The Bank then substituted a complaint for its intervention. No one was misled. The parties were not inconvenienced. Whatever liability attached to the defendants grew out of Helms' note and Warren's indorsement. The cases cited by appellant Warren, while dealing with a related subject, are controlled by the facts there stated and are not decisive of the rights here urged. The Court did not err in denying the motion.

While it would have been better to submit Warren's liability with an instruction which did not state that only one of the two could be held by the Bank, there was sufficient clarification in the same instruction, when the jury was told that judgment should not go against this appellant unless a preponderance of the evidence disclosed his unconditional indorsement.

For the prejudicial error in Instruction No. 1 the judgment in favor of Helms is reversed on the Bank's direct appeal, and the cause is remanded for a new trial. Judgment as to Warren is affirmed.